**MATTHEW C. BINNINGER**
California State Bar No. 265148
LAW OFFICE OF MATTHEW C. BINNINGER, APC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 889-2665
Matt@Binningerlaw.com

**ZACH A. BROOKS**
California State Bar No. 346455
ZACH BROOKS LAW, SP
421 Broadway Unit 698
San Diego, California 92101
Telephone: (619) 786-2785
Zbrooks@zachbrookslaw.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHAVEZ, Mark<br><br>Defendant. | Case No.: 24-CR-0492-SPG-1<br><br>Honorable Sherilyn Peace Garnett<br>Date: 12/17/2025<br>Time: 9:00 a.m.<br>Courtroom 5C<br><br>**MR. CHAVEZ'S SENTENCING MEMORANDUM** |

**I.**
**INTRODUCTION**

Mark Chavez appears before this Court for sentencing after accepting responsibility for his role in the unlawful transfer of 22 ketamine vials and 9 ketamine lozenges to Salvador Plasencia that ultimately was sold to Matthew Perry between September and October of 2023. Though Mr. Chavez's offense is a serious abuse of a position of trust, Mr. Chavez never met or treated Mr. Perry, the ketamine he sold was not the cause of

1

Mr. Perry's death, and Mr. Chavez accepted responsibility early in this case and signed a plea agreement prior to any indictment, agreed to cooperate, and voluntarily surrendered his medical license even before his detention hearing.

The consequences Mr. Chavez has already faced are significant. Once a practicing emergency room physician, he lost his profession, suffered public disgrace, and now earns a living as an Uber driver. He has remained compliant with all terms of pretrial supervision and continues to demonstrate sincere regret for his actions. Given the totality of the circumstances, including his cooperation, early acceptance of responsibility, and the lasting consequences already imposed, a sentence of time served, followed by three years of supervised release, is sufficient but not greater than necessary to meet the purposes of sentencing under 18 U.S.C. § 3553(a).

## II.
## THE GUIDELINES AND THE 3553(A) SENTENCING FACTORS

This Court has great discretion in choosing an appropriate sentence for Mr. Chavez. In determining his sentence, this Court is guided by the sentencing factors set forth in 18 U.S.C. § 3553(a) (the "section 3553(a) factors"), using the Guidelines as a starting point. The Court must determine a reasonable sentence after full consideration of the § 3553(a) factors. *United States v. Booker*, 543 U.S. 220 (2005).

**A. The Guidelines**

Mr. Chavez contends that his offense level should be calculated as follows:

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2D1.1(a)(5) & (c)(17)) | 6 |
| Abuse of Position of Trust or Use of Special Skill (U.S.S.G. § 3B1.3) | +2 |
| Obstruction of Justice (U.S.S.G. § 3C1.1) | +2 |
| Acceptance of Responsibility (U.S.S.G § 3E1.1(a)) | -2 |
| Adjusted Offense Level: | 8 |

2

*Adjusted Guidelines Range*

Mr. Chavez is in Criminal History Category (CHC) I. His guidelines range is 0 to 6 months. Accordingly, the requested sentence is within the guidelines range.

**A. The § 3553(a) Factors Support a Sentence of Time Served and Three Years of Supervised Release.**

*1. Nature & Circumstances of Offense*

The government's investigation showed that Mr. Chavez's conduct was limited in scope, occurred over a short period of time, and was far removed from the tragic events of October 28, 2023. Although Mr. Chavez accepts full responsibility for his actions, the record independently establishes that he never met Matthew Perry, never entered his residence, never administered medication to him, and did not supply the ketamine that caused his death.

The total amount of ketamine supplied by Mr. Chavez consisted of roughly 22 vials and 9 lozenges (*Id.* at ¶37). The total financial gain amounted to approximately five thousand dollars. The conduct occurred within a narrow window spanning late September and early October of 2023.

Mr. Chavez had no direct contact with Mr. Perry during this period. At times when Mr. Chavez learned how the drug was being administered, he expressed concern and even reprimanded Dr. Plasencia for giving injections in inappropriate and unsafe environments such as the back seat of a parked car (*Id.* at ¶33).

On October 12, 2023, Mr. Chavez's involvement effectively ended. After being contacted by a Medical Board investigator about unrelated clinic-inventory issues, he informed Dr. Plasencia that he could no longer obtain ketamine and ceased all further participation (*Id.* at ¶35).

Two weeks later, on October 28, 2023, Mr. Perry tragically died after receiving multiple injections of ketamine. None of the ketamine administered on that date came from Mr. Chavez. According to the PSR, the fatal injections were administered by a different individual, co-conspirator Iwamasa, using ketamine supplied by a different source, Erik Fleming (*Id.* at ¶¶66-68). The autopsy and investigative findings confirm that the ketamine

present in Mr. Perry's bloodstream was from that separate supply. At the time of Mr. Perry's death, none of the ketamine previously supplied by Mr. Chavez remained.

Since then, Mr. Chavez accepted responsibility for this conduct, acknowledged the accuracy of the plea agreement's factual basis, and has not repeated any such behavior.

Although his decisions contributed to the sequence of events that ultimately ended in tragedy, the full record demonstrates that his role was limited and peripheral. He was not present for any of the unsafe administrations of ketamine, he did not participate in the reckless conduct that directly led to Mr. Perry's death, and he did not supply the ketamine involved in the fatal injections. This context is essential for evaluating the nature and circumstances of the offense under Section 3553(a).

*2. Personal History and Characteristics*

Mr. Chavez was raised in New Mexico by parents who worked long hours under difficult circumstances. The PSR reflects that his childhood was shaped by exposure to his father's trauma from military service and by the instability that followed his father's struggles with alcohol and psychological wounds (PSR at ¶¶79-82). Despite this environment, Mr. Chavez excelled academically and remained focused on improving the lives of others. The PSR confirms that he earned a biochemistry degree and later fulfilled his long-standing goal of attending medical school at UCLA, ultimately practicing as an emergency room physician for many years (*Id.* at ¶¶89-96). That professional path reflected not ambition alone, but a desire to reduce suffering and provide care for individuals in crisis.

The letters submitted to the Court illustrate that this desire to help others extended well beyond the emergency room. They consistently describe a person who has spent his life lifting those around him. His lifelong friend Dale Gonzales writes that Mr. Chavez has always been "a person of integrity, kindness, and generosity," and that he has inspired those closest to him to improve their health and well-being (Exhibit A, Dale Gonzales Letter). Mr. Gonzales explains that for more than fifty years he has watched Mr. Chavez encourage healthier living, offer thoughtful guidance, and support others without expecting anything in return. This is who Mr. Chavez has been throughout his life.

His cousin, Clarence Vincent Lithgow, a longtime professional in government financial management, describes Mr. Chavez as a respectful, studious, and self-reliant person from childhood onward. He recalls Mr. Chavez patiently waiting for five years to be accepted into UCLA's medical program and then devoting two decades to saving lives as an emergency physician (Exhibit B, Clarence Vincent Lithgow Letter). Mr. Lithgow notes that Mr. Chavez has already suffered consequences that far exceed what most defendants in similar situations face. He lost his profession, his reputation, and the identity he had built over many years. Yet Mr. Lithgow emphasizes that Mr. Chavez has never posed a danger to the community and has always been a person who works to better the lives of others.

Gregory Damian, who has known Mr. Chavez personally and professionally for more than a decade, offers further insight into his character. As both a patient and a business partner, Mr. Damian observed Mr. Chavez's "exceptional medical competence, reliability, and dedication to patient care" (Exhibit C, Gregory Damian Letter). He describes a physician who consistently took the time to understand the needs of his patients, who approached his work with thoroughness and empathy, and who dedicated substantial personal resources to developing a medical technology designed to help individuals with limited mobility. Mr. Damian repeatedly emphasizes Mr. Chavez's integrity and strong moral character.

Similarly, Frank Borst, a business partner and friend of ten years, writes that Mr. Chavez's professional life has always been driven by a desire to improve the health of others. He describes Mr. Chavez's efforts to create the Gravity Ball Method, a fitness system intended to promote accessible movement and health for all people, regardless of background or income (Exhibit D, Frank Borst Letter). Mr. Borst recounts how Mr. Chavez invested nearly all his earnings as an emergency physician into this project, lived minimally to pursue his vision, and consistently sought ways to help individuals in need. He describes Mr. Chavez driving monthly from California to New Mexico to care for his aging parents, even after his mother no longer recognized him, and mentoring students simply because he believed in their potential.

Finally, Reverend Patrick Cunningham, a hospice chaplain with more than forty years of experience, writes that he has a "finely tuned baloney barometer" developed over decades of working with people at vulnerable moments in their lives. Reverend Cunningham explains that Mr. Chavez demonstrates genuine remorse, sincerity, and a commitment to becoming a better and more responsible human being (Exhibit E, Rev. Patrick Cunningham Letter). He highlights Mr. Chavez's compassion for both people and animals, his willingness to speak openly about his mistakes, and his determination to live a life that helps others.

Taken together, these accounts present a consistent and credible portrait. Mr. Chavez is a person who spent his entire adult life caring for others, both professionally and personally. He has devoted himself to improving public health, mentoring students, assisting friends and relatives, and developing tools to make fitness accessible to people with physical limitations. He has been a source of stability, guidance, and compassion in the lives of many. The conduct that brings him before the Court is entirely inconsistent with the values he has demonstrated over decades.

The PSR confirms that he has no meaningful criminal history (PSR at ¶¶70-72), has complied with every condition of pretrial supervision (*Id.* at ¶7), and has lived a stable and productive life until this isolated period. He now supports himself through ride-share driving, earns modest income, and has no remaining assets after the loss of his career, his reputation, and his financial stability (*Id.* at ¶¶93-105). These consequences have left him in a position far more severe than what the Guidelines contemplate for a first-time, non-violent offender.

The letters submitted to the Court illustrate that Mr. Chavez is not defined by the conduct in this case. He is defined by decades of service, compassion, and dedication to the well-being of others. These personal characteristics strongly support the conclusion that a sentence of time served, followed by a period of supervised release for three years, is sufficient to accomplish the goals of sentencing.

1

2

*3. To Promote Respect for the Law; to Afford Adequate Deterrence to Criminal Conduct, and To Protect the Public from Further Crimes*

3

4

5

6

7

8

9

10

A sentence of time served, followed by three years of supervised release, is fully sufficient to promote respect for the law, to deter future misconduct, and to protect the public. Mr. Chavez has lived more than fifty years without any meaningful criminal history, and the conduct before the Court represents an aberration in an otherwise law-abiding and service-oriented life. The PSR confirms that he has zero criminal history points and falls in Criminal History Category I (PSR at ¶¶70-72). His compliance with every condition of pretrial supervision further reflects that he poses no risk of reoffending and no threat to the community (*Id.* at ¶7).

11

12

13

14

15

16

17

General deterrence is also effectively served by the consequences Mr. Chavez has already experienced. The loss of his medical license is significant, and it is among the most severe collateral consequences that any professional can face (*Id.* at ¶92). He spent over twenty years building a career defined by emergency service, patient care, and public health, and that career has now ended as a direct result of this case. The impact of that loss extends far beyond the courtroom. It affects his identity, his financial stability, and his future prospects. For a first-time offender who dedicated his professional life to assisting others, this consequence alone creates a powerful and lasting deterrent.

18

19

20

21

22

23

24

25

Promoting respect for the law does not require additional incarceration. The law is respected when it is applied proportionately and with recognition of both harm and context. Mr. Chavez has demonstrated respect for the process at every stage. He cooperated early, accepted responsibility before charges were filed, complied fully with supervision, and has shown genuine remorse for the harm his actions set in motion. Individuals in the medical community will see this outcome and understand the seriousness with which the justice system treats violations involving controlled substances. That message does not depend on a custodial sentence.

26

27

28

Specific deterrence is plainly unnecessary. The PSR notes that Mr. Chavez is now employed as a ride-share driver and earns modest income while attempting to rebuild his life (*Id.* at ¶93). He no longer holds a DEA registration, no longer has access to controlled

substances, and no longer practices medicine in any capacity. The circumstances that enabled the offense no longer exist, and there is no realistic possibility of similar conduct occurring in the future.

Protecting the public from further crimes is not accomplished by unnecessary incarceration. It is accomplished by recognizing when a defendant has already suffered life-altering consequences and poses no danger going forward. Mr. Chavez has demonstrated through decades of professional service, and through his conduct since this case began, that he is not a person who resorts to criminal activity. The letters submitted to the Court uniformly describe a man who has spent his life caring for others, promoting health, and serving his community. Nothing in the record suggests that he presents any risk of future criminal behavior.

In sum, the goals of promoting respect for the law, deterring future misconduct, and protecting the public are fully satisfied by a sentence of time served and a three-year period of supervised release. Additional incarceration would serve only to inflict punitive harm without advancing any legitimate sentencing purpose.

### III.
### CONCLUSION

Mr. Chavez respectfully requests that this Court sentence him to time served and 3 year of supervised release.

Respectfully submitted,

DATED: December 3, 2025

*Matthew C. Binninger*
**MATTHEW C. BINNINGER**
Law Office of Matthew C. Binninger, APC
Attorney for Mr. Chavez

*Zach A. Brooks*
**ZACH A. BROOKS**
Zach Brooks Law, SP
Attorney for Mr. Chavez